Joseph P. Costa, Esq., State Bar Number 130131
Lindsay Cinotto, Esq. State Bar Number 258852
COSTA, BESSER & CHILDRESS, LLP
17383 Sunset Blvd., Suite A350
Pacific Palisades, CA 90272
Telephone: (310) 394-6611
Facsimile: (310) 394-6612

Attorneys for Plaintiff Henry Richard Russell

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY RICHARD RUSSELL, an individual,<br><br>            Plaintiff,<br><br>    v.<br><br>KEENON JACKSON (aka YG), an individual; YG 400 WAYS, INC. a California Corporation d/b/a YG 400 PUBLISHING; DIJON ISAIAH MCFARLANE (aka DJ MUSTARD), an individual; SONGS MUSIC PUBLISHING CA, LLC, a California limited liability company; UMG RECORDINGS, INC., a Delaware corporation d/b/a DEF JAM RECORDINGS and DOES 1-10 inclusive.<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>(1) Copyright Infringement<br>(2) Violation of Cal. Civ. Code §3344<br>(3) Fraud in the Inducement<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Henry Richard Russell ("Russell" or "Plaintiff") p/k/a Grimmis, complains and alleges against Defendants Keenon Jackson (p/k/a YG), YG 400

Ways, Inc., a California Corporation (d/b/a YG 400 Publishing), Dijon Isaiah McFarlane (p/k/a DJ Mustard), Songs Music Publishing CA, LLC, a California limited liability company, and UMG Recordings, Inc., a Delaware corporation d/b/a Def Jam Recordings (collectively "Defendants") as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. This is an action for violations of copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq. Supplemental jurisdiction of the related claims is proper pursuant to 28 U.S.C. §1367.

2. Further, personal jurisdiction is proper over Defendants because they market products and services to customers and prospective customers in this District and State and Plaintiff is informed and believes and alleges thereon that at all relevant times herein, Defendants performed services, sold their products and/or otherwise transacted business in this District and State.

3. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(2). Defendants transact business in the Central District of California and the acts alleged herein took place in the Central District of California.

## THE PARTIES

4. Plaintiff Henry Richard Russell, professionally known as "Grimmis", is an artist, commonly known in the hip hop/rap industry for writing poems and rapping them. He is further known by his very distinctive voice.

5. Plaintiff is informed and believes and thereon alleges that Defendant Keenon Jackson (p/k/a YG) ("YG") is an individual residing in Los Angeles County, California.

6. Plaintiff is informed and believes and thereon alleges that YG 400 Ways, Inc. is a California Corporation doing business as YG 400 Publishing, and has its principal place of business located in Los Angeles County, California, within this district.

7. Plaintiff is informed and believes and thereon alleges that Dijon Isaiah McFarlane, who is professionally known as DJ Mustard is a music producer who resides in Los Angeles County, California, within this district.

8. Plaintiff is informed and believes and thereon alleges that Songs Music Publishing CA, LLC is a California limited liability company with its principal place of business located in Los Angeles County, California, within this district.

9. Plaintiff is informed and believes and thereon alleges that UMG Recordings, Inc., a Delaware corporation doing business as Def Jam Recordings,

has its corporate headquarters and/or principal place of business located in Santa Monica, California, within this district.

## GENERAL ALLEGATIONS

### Plaintiff's Poems

10. Prior to 2014, Plaintiff was introduced to YG and the two became friends and associated together in the rap/hip hop music circle.

11. In recording his first album "*My Krazy Life*", YG asked Russell if he would like to collaborate with him on this album and if he could use some of his previously created material to incorporate into his songs, as well as create new material for the album. At the time, YG was not a known artist and for this reason, did not have the resources to pay Plaintiff. For this reason, he informed Plaintiff that Plaintiff would be compensated by sharing in the revenues of the songs that Plaintiff contributed to, in a mutually acceptable manner. Ultimately, YG ended up using Russell's poems/words, as well as voice and performance, as described in detail below however never compensated him at all for his contributions.

12. In early 2014, Russell performed his poem titled "*Bitch! Who Do you Love?*" in the song "Who Do you Love", featuring Drake. He did this in consideration for YG's promise to him that he would share in the revenues of the song once revenues were obtained. The original poem is rapped by Russell on this song and starts at 3:59 and continues until the 4:30 mark of the song. As stated, in

addition to being Russell's original copyrighted lyrics, it is also Russell's voice rapping the lyrics to the poem. Russell's original performance was also filmed and released as a music video for this song. This song was released on the *My Krazy Life* album on or around March 18, 2014 and the video was publicly released on or around that same time.

13.  Similarly, in early 2014, Russell used his original lyrics/poem, as well as his performance when rapping his original lyrics/poem titled *"The Gladiator"* for the intro of the song titled "Bickinbackbeingbool." The performance starts at the 0:01 mark of the song, and continues through 1:39 of the song. This song was released in connection with YG's *My Krazy Life* album on or around March 18, 2014, as well as a remix on the *Blame it on the Streets* album, released on or around December 15, 2014, by Def Jam Records.

14.  In addition, in or around 2014, knowing that Russell's distinct voice and way with words would be able to pump up the crowd, YG asked Russell to make a speech to introduce him at a live performance. YG recorded this introduction, and then published it along with the song YG performed after the introduction. Russell's introduction speech can be found at the beginning of the *"Blame it on the Streets – Live in the Bay"* track on the *Blame it on the Streets* album. YG also used this introduction in connection with live performances. YG

did not have Russell's consent to use his voice absent mutually agreeable compensation terms, which YG never sought to obtain.

15. In connection with his second album, *Blame it on the Streets*, which was released by Def Jam Records, YG directed and produced a short film depicting life on the streets of Compton. Russell narrates the entire 1 minute and 9 second trailer for the movie reciting an original poem titled "*Sick Minded*" written by him (the "Blame it on the Streets Trailer").

16. In exchange for performing on YG's albums and music videos, and using Russell's copyrighted lyrics/poems, YG promised to compensate Russell if and when the albums started to generate revenues through an agreement to share in such revenues, in an amount to be mutually agreed upon at a later time.

17. Upon information and belief, *My Krazy Life* sold 61,000 copies the first week it was released, and was certified Gold by the Recording Industry Association of America in March of 2016.

18. Upon information and belief, *Blame it on the Streets*, sold 17,000 copies the first week and over 90,000 as of June of 2016. In addition, the *Blame it on the Streets* short film is available to stream on *Netflix*.

19. After the clear success of both *Blame it on the Streets* and *My Krazy Life* albums, Russell tried to receive compensation for his contributions based on the previous representations of YG, whereby he was promised a share of the

revenues from his contributions. However, Defendants have refused to pay Russell for any portions of his contributions and refused to even discuss with him any form of compensation for his performances and literary contributions to the songs. As of the date of this filing, Russell was not paid anything for his contributions to these recordings and videos. Accordingly, on or around August 23, 2016, Russell put Defendants on notice that any and all implied licenses to use his material were terminated as a result of the failure of the condition precedent to the use of his copyrighted materials to pay him a share of the revenues from these works.

20.   To date, despite repeated requests to be compensated for the use of his copyrighted material, Defendants have refused to compensate Russell in any form, despite the clear success of the songs and videos.

## FIRST CLAIM FOR RELIEF

**(Copyright Infringement Against All Defendants)**

21.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 20 of this Complaint and reiterates the same, as though fully set forth herein.

22.   Russell owns pending federal copyright registrations in and to the following:

a. The performance of his poem "*Sick Minded*" in the *Blame it on the Streets* trailer, registered as a work of the performing arts (Case #1-4260613928);

b. The lyrics of his poem "*Sick Minded*", registered as a literary work (Case #1-4260614136).

c. The performance of his poem titled "*Bitch! Who Do you Love?*" in the music video from 3:59 to 4:30 featured in the song and music video of *Who do you Love? (featuring Drake)* registered as a work of the performing arts (Case # 1-4260613901);

d. The lyrics of his poem "*Bitch! Who do you Love?*", registered as a literary work (Case # 1-4260614111).

e. The performance of his poem "*The Gladiator*" in the music video from 0:01 to 1:39 featured in the song and music video for *Bickinbackbeingbool,* registered as a work of the performing arts (Case # 1-4260614025).

f. The lyrics of his poem "*The Gladiator*" registered as a literary work (Case # 1-4260614186).

g. The original version of "*The Gladiator*" created in 1993, registered as a literary work (Case #1-4260614161). Plaintiff's work is

wholly original and constitutes copyrightable subject matter under the Copyright Act of 1976.

23. Plaintiff complied in all respects with the copyright laws to secure the exclusive rights and privileges in the copyrights in his work, including, but not limited to the rights relating to reproduction, adaptation, distribution, public display, public performance, or derivative works.

24. Russell is informed and believes, and thereon alleges, that Defendants' use of Russell's copyrighted material is an exact replica and therefore substantially similar.

25. By their conduct as alleged herein, Defendants infringed, and continue to infringe, Plaintiff's exclusive rights to reproduce his work, to prepare derivative works based upon them, to distribute copies of them to the public, and to display them to the general public.

26. Plaintiff is further informed and believes that Defendants' acts of infringement were willful, intentional and with disregard of and with indifference to the rights of the Plaintiff.

27. As a direct and proximate result of Defendants' repeated infringements of Plaintiff's reproduction, distribution, public display, public performance, or derivative work rights, Plaintiff sustained and continues to sustain substantial

damages in an amount presently unknown but which will be established at trial according to proof.

28. Defendants' infringements are continuing and threaten to irreparably harm Plaintiff's copyright interests, as well as his good name and good will. Accordingly, Plaintiff is entitled to an injunction barring Defendants, their agents, employees and representatives from: (i) using Plaintiff's copyrighted lyrics/words/poems and performances identified above.

29. Plaintiff has no adequate remedy at law to redress Defendants' continuing wrongful conduct.

30. As a direct result of Defendant's wrongful infringing conduct, Plaintiff is also entitled to additional copyright damages as allowed by law, including, if Plaintiff so elects, Plaintiff's actual damages, Defendants' profits and attorney fees according to proof at trial.

## SECOND CLAIM FOR RELIEF

**(In the Alternative, Violation of the California Statutory Right of Publicity; Civil Code §3344, Against All Defendants)**

31. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through and including 30 of this Complaint as if set forth in full herein. Should

this Court find that any element of Plaintiff's first cause of action fails, as an alternative theory, Plaintiff alleges as follows:

32. At all relevant times, Plaintiff had the sole and exclusive right of publicity with regard to the use of his image, name and likeness, including his voice.

33. Defendants used Russells' name and likeness in connection with the songs and music videos for *Who do you Love and Bickenbackbeingbool,* without any compensation, which is a violation of any rights that they had to use his name and likeness. In addition, Defendant used Russell's voice for the trailer for the short film *Blame it on the Streets.* Defendant has failed to compensate Russell for his contributions to these projects, and therefore any implied license to use Russell's name, voice, image and likeness was never consummated and/or were revoked and any such continued publication are violations of Russell's rights of publicity.

34. Plaintiff's image and distinct voice are readily identifiable in the *Who do you Love* song and music video, the *Bickenbackbeingbool* song and music video, as well as the *Blame it on the Streets* trailer. Despite requests to cease the use of these materials, Defendants have refused.

35. In addition, as alleged above, YG asked Russell to perform an introduction speech and YG recorded this lively introduction and published it on

his album. Russell's introduction speech can be found on the *Blame it on the Streets – Live in the Bay* track on the *Blame it on the Streets* album.

36. In doing the acts alleged herein, Defendants have knowingly, willfully, and unlawfully used and misappropriated Plaintiff's name and likeness in connection with the unauthorized recording and publication of the subject audio and video recordings for their own commercial purpose.

37. Defendants' misappropriation of Plaintiff's name and likeness for their own commercial purpose is a violation of California Civil Code §3344.

38. Defendants' wrongful conduct as alleged hereinabove, without regard to whether Defendants acted intentionally or with any other particular state of mind or scienter, renders Defendants liable to Plaintiff for the misappropriation of his likeness and for the damages caused thereby. In doing the acts as alleged hereinabove, Defendants acted with actual malice and constitutional malice, that is, they acted intentionally, or with conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages to punish Defendants, and to deter such conduct in the future, in an amount to be determined at trial.

39. As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at trial, and is entitled to statutory attorneys' fees.

## THIRD CLAIN FOR RELIEF

### (Fraudulent Inducement, Against Defendant YG Only)

40. Russell repeats and incorporates the allegations set forth in paragraphs 1 through 20, 22-30, and 32-39 of this Complaint as if set forth in full herein.

41. Prior to 2014, Russell and YG became friends through the rap/hip hop music industry. YG informed Russell he was making an album and asked Russell if he could use some of Russell's pre-existing poems/raps for his tracks, as well as creating new poems/raps. Because YG was just starting his musical career, he did not have funds to pay Russell for his contribution, but assured Russell that if and when the album became successful, he would compensate Russell for his contributions.

37. Based on the above representations by YG, Russell agreed to provide YG with his previous created poem titled "The Gladiator", which was incorporated into one of YG's hit songs. In addition, Russell wrote new material, which YG incorporated into his songs and into his trailer for his short documentary film. Besides providing the lyrics written and owned by Russell, he also performed the poems on the tracks, and appeared in the music videos performing the lyrics.

38. Russell is informed and believes and alleges thereon that at the time the representations were made by YG, he knew that the representations were false. The true facts were that YG never intended to compensate Russell for his multiple

contributions to the albums.

39. Russell is informed and believes and on that basis alleges that the above representations and/or material omissions of fact by YG were made with the intent to induce, and did wrongfully induce, Russell to contribute to YG his lyrics/raps/poems and perform on the albums and in the music videos.

40. At the time these material misrepresentations of fact and/or omissions of material fact occurred, Russell was ignorant of the falsity of the above representations and/or omissions and justifiably relied upon such misrepresentations. If Russell was made aware of the falsity of the above misrepresentations of material facts, or omissions of material fact, Russell would have never contributed his performance and lyrics to YG's albums, trailers and/or music videos.

41. As a direct and proximate result of said misrepresentations, Russell has been damaged in an amount to be ascertained according to proof, but believed to be well in excess of the jurisdictional minimums of this Court.

42. The aforementioned conduct of YG is willful and malicious and was intended to oppress and cause injury to Russell. Russell therefore alleges that YG is guilty of fraud as defined by C.C.P. §3294 with regard to the above referenced misrepresentations and that Russell should recover punitive damages in an amount

sufficient to punish YG according to his wealth and assets and to deter YG from repeating such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter its judgment against Defendants as follows:

(1) For copyright damages as proscribed by law, including but not limited to Plaintiff's actual damages and/or Defendants' profits according to proof;

(2) For an injunction prohibiting the use of Plaintiff's copyrighted material, as well as Plaintiff's name and likeness;

(3) For punitive damages (for the third cause of action only);

(4) For allowable attorneys' fees; and

(5) For all other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: January 4, 2017    COSTA BESSER & CHILDRESS LLP

By:  /s/ Joseph P. Costa
_____
Joseph P. Costa

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated:  January 4, 2017    COSTA BESSER & CHILDRESS LLP


                            By:    /s/ Joseph P. Costa
                                          _____
                                          Joseph P. Costa